IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WARREN KATZ, )<br>Plaintiff, )<br> )<br>v. )<br> )<br>HOLLAND & KNIGHT LLP, et al., )<br>Defendants. ) | No. 1:08cv1137 |

## ORDER

The matter came before the Court on defendants' motion to dismiss plaintiff's *pro se* complaint on the grounds (i) that plaintiff lacks standing to bring his claims for fraud, declaratory judgment, and breach of fiduciary duty; (ii) that his claim for declaratory judgment does not present a controversy between these parties; and (iii) that his claims for fraud and breach of fiduciary duty are time-barred. The matter was fully briefed and argued, including the submission of supplemental pleadings. In the end, for the reasons stated from the Bench during the course of a February 6, 2009, hearing, the Court granted defendants' motion. This Order memorializes the Bench ruling and is issued six days later, as the Court decided to reflect further on the parties' briefs and oral arguments. To the extent that the reasons or result stated herein vary from those stated from the Bench, this Order controls.

I[1]

Plaintiff Warren Katz is a Florida resident who claims to be the successor-in-interest of Wrenn Associates, Ltd. ("Wrenn"), a now-dissolved Virginia corporation previously engaged in building design and development. In 1995, Wrenn's employee-architect designed a number of patio homes and townhouses for the multi-unit "Hemingway" development in Reston, Virginia. After the Hemingway project won a builders' association design award, Lake Manassas, LLC ("LM"), a development company, approached plaintiff, then Wrenn's sole owner, regarding replication of the Hemingway designs in LM's "Lake Manassas" townhouse development in Prince William County, Virginia. Although plaintiff initially declined LM's offer, he later agreed to joint venture twenty units in the Lake Manassas development with Centaur Homes, Inc. ("Centaur"), a custom home building company.

Thereafter, Wrenn furnished and adapted the Hemingway designs for the Lake Manassas units.[2] Additionally, because LM wanted some aspects of the Lake Manassas units' designs to vary from the Hemingway designs, Centaur hired a design company, Earth Design Associates ("EDA"), to design additional aspects of the Lake Manassas units. In exchange for its work, Wrenn was to be paid $300,000—$15,000 per unit, due upon settlement of each townhouse. After seven units were

---

[1] The facts recited herein are derived largely from plaintiff's complaint and are construed in the light most favorable to plaintiff. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989). Facts recited beyond the four corners of the complaint are the product of judicial notice, pursuant to Rule 201, Fed. R. Evid. *See Field Auto City, Inc. v. Gen. Motors Corp.*, 476 F. Supp. 2d 545, 555 n. 11 (E.D. Va. 2007) (citing *Andrews v. Daw*, 201 F.3d 521, 524 n. 1 (4th Cir. 2000) (undisputed contents of court pleadings may be judicially noticed at motion to dismiss stage)).

[2] Wrenn also provided the Lake Manassas development with, *inter alia*, (i) at-cost supervision and labor for concrete and carpentry work, (ii) computerized cost data, (iii) marketing and sales materials, and (iv) financing.

sold, Centaur defaulted on its construction and land loans. At that time, Wrenn had only been paid $70,000. In order to salvage equity in the Lake Manassas project, Wrenn paid off Centaur's land loan and completed three additional units, bringing the total number built to ten. Plaintiff then offered to sell LM the plans for the completion of the next ten units, but LM declined, and plaintiff notified LM that it could not use Wrenn's Lake Manassas designs for any additional units. Thereafter, in 2001, Quaker Homes, Inc. ("Quaker"), another development company, purchased the ten remaining Lake Manassas lots and hired Residential Design Group, Inc. ("RDG") to design the final ten townhouses. Plaintiff claims that the RDG designs, which Quaker used to complete the Lake Manassas development, were nearly identical to the Wrenn designs used for the first ten units.

In 2003, plaintiff contacted defendant Holland & Knight LLP ("H&K") regarding (i) copyright registration of the Hemingway and Lake Manassas designs, which were prepared as work-for-hire by Wrenn architects; and (ii) possible copyright infringement suits against, *inter alia*, LM, Quaker, and RDG for using those designs on the final ten Lake Manassas units. On October 16, 2003, H&K registered a copyright in Wrenn's name for the Lake Manassas designs. In this regard, plaintiff specifically alleges that "Wrenn was the sole copyright owner of the plans." Compl. ¶ 19. Thereafter, on March 30, 2004, H&K filed a copyright infringement suit on Wrenn's behalf alleging that LM, Quaker, and RDG had infringed Wrenn's copyright. *See Wrenn Assocs., Ltd. v. Residential Design Group, Inc.*, No. 1:04cv354 (E.D. Va. March 30, 2004) (Complaint). Over the next several months, plaintiff communicated with defendants Thomas Brownell and Jocelyn Brittin, both H&K partners, with respect to various aspects of Wrenn's pending copyright infringement suit. In October 2004, after that suit's defendants contested Wrenn's ownership of the copyright at issue, Brownell expressed concern about the viability of Wrenn's claims, and he advised plaintiff to accept a

settlement offer. Plaintiff alleges that during this time, "Brownell intentionally concealed [applicable] case[] [law] from [him] and misrepresented copyright law expressed in those cases in order to induce [him] to agree to a settlement that [he] would not have accepted otherwise." Compl. ¶ 37. In any event, the record reflects that plaintiff agreed to a settlement of Wrenn's copyright infringement suit, and on October 27, 2004, the suit was dismissed with prejudice pursuant to the parties' settlement. *See Wrenn*, No. 1:04cv354 (E.D. Va. Oct. 27, 2004) (Order).

In June 2005, plaintiff obtained Brownell's file on the *Wrenn* copyright case, which contained the case law plaintiff alleges Brownell intentionally concealed from him. More than three years later, plaintiff, proceeding *pro se*, filed the forty-two page, two-hundred-twelve paragraph complaint at issue here, which purports to allege claims against H&K, Brownell, and Brittin for (i) fraud ("Count I"), (ii) declaratory judgment ("Count II"), and (iii) breach of fiduciary duty ("Count III"). Distilled to its essence, plaintiff's complaint alleges (i) that defendants intentionally concealed applicable case law relating to Wrenn's copyright infringement claims, (ii) that defendants intentionally misrepresented the relative strength of Wrenn's copyright infringement claims, and (iii) that defendants accordingly induced Wrenn to agree to a settlement of these claims for less than their value. Based on those allegations, plaintiff asserts that he is entitled to money damages for fraud and breach of fiduciary duty, and he further contends that he is entitled to a declaratory judgment with respect to ownership of the copyright at issue in *Wrenn*.

Defendants filed a timely motion to dismiss, arguing (i) that Wrenn, not plaintiff, is the real party in interest with standing to bring these claims; (ii) that plaintiff's declaratory judgment claim does not present a controversy between these parties; and (iii) that plaintiff's fraud and breach of fiduciary duty claims are time-barred. The matter was fully briefed and argued, and for the reasons

stated from the Bench, defendants' motion was granted.

## II

As a threshold matter, it is necessary to address a substantial and difficult question with respect to whether there is subject matter jurisdiction over plaintiff's claims.[3] Here, plaintiff asserts (and defendants now agree)[4] that federal question jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1338(a)[5] "based upon the underlying copyright infringement case in which the [d]efendants represented the [p]laintiff." Compl. ¶ 6.[6] And where, as here, a plaintiff seeks a remedy provided by state law, federal question jurisdiction pursuant to § 1338(a) is only appropriate where the plaintiff

---

[3] Although defendants argue that it is unnecessary to address the jurisdictional question presented because the suit is readily resolved on other grounds, the jurisdictional question is a threshold issue that must be addressed. Indeed, "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95. (holding that Article III jurisdiction is a threshold issue that must be addressed before merits questions). Indeed, "[f]or a court to pronounce upon the meaning . . . of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act *ultra vires*." *Id.* at 101.

[4] It is important to observe that although the parties agree there is subject matter jurisdiction over plaintiff's complaint, it is well-settled that "parties cannot . . . create subject matter jurisdiction or waive its absence." *Orquera v. Ashcroft*, 357 F.3d 413 (4th Cir. 2003) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court.")).

[5] Section 1338(a) provides as follows:

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

28 U.S.C. § 1338(a).

[6] Plaintiff does not assert diversity jurisdiction, nor does it appear that he could successfully do so, given that H&K's citizenship includes the citizenship of all its partners, at least one of whom is a Florida citizen. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990).

" 'asserts a claim requiring construction of the [Copyright] Act' "—in other words, where "a substantial question of federal law is at issue." *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969–70 n.3 (4th Cir. 1990)[7] (quoting *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir. 1964) and citing *Smith v. Kan. City Title & Trust Co.*, 255 U.S. 180 (1921)).[8]

With respect to the precise question presented—whether federal question jurisdiction is appropriate where, as here, a plaintiff brings a claim for fraud or breach of fiduciary duty against his former attorneys for their alleged misrepresentations regarding the strength of an underlying federal copyright infringement claim—neither party has cited controlling authority, nor has any been found.

---

[7] In *Arthur Young*, the Fourth Circuit plainly set forth "the definitive jurisdictional test for copyright cases" as follows:

> [A]n action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, *e.g.* a suit for infringement or for the statutory royalties for record reproduction, . . . or asserts a claim requiring construction of the Act, . . . or, at the very least, and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property should be enjoyed by their true owner is not enough to meet this last test.

*Arthur Young*, 895 F.2d at 969–70 (quoting *T.B. Harms*, 339 F.2d at 828) (alterations in original). Here, it is clear that plaintiff's suit does not request a "remedy expressly granted by the Act," as plaintiff's claims stem from H&K's *representation* related to Wrenn's attempts to seek such remedies in a different lawsuit. Thus, the question is whether this suit "asserts a claim requiring construction of the [Copyright] Act"—in other words, whether federal question jurisdiction "is nonetheless proper because a substantial question of federal law is at issue." *Id.* at 970 n. 3.

[8] *See also Christopher v. Cavallo*, 662 F.2d 1082, 1083 (4th Cir. 1981) (finding § 1338(a) federal question jurisdiction over a state-law breach of warranty claim where "construction of the copyright laws of the United States" was "necessary to prove the breach of warranty"), *cited in Arthur Young*, 895 F.2d at 70 n. 3. Of course, the " 'mere presence of a federal issue' " in a state-law claim " 'does not automatically confer federal-question jurisdiction.' " *Custer v. Sweeney*, 89 F.3d 1156, 1168 (4th Cir. 1996) (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986)) ("[T]he possibility that state courts may incorrectly or inconsistently interpret ERISA's fiduciary duty provisions in the context of malpractice claims . . . does not militate in favor of the exercise of federal subject matter jurisdiction in such cases.").

Indeed, it appears the only two federal circuits to address § 1338(a)'s application in analogous circumstances have reached arguably contradictory results. Specifically, in *Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, LLP*, 504 F.3d 1262 (Fed. Cir. 2007), the Federal Circuit found § 1338(a) federal question jurisdiction over a state-law malpractice claim because it required litigation of the underlying patent infringement claims that formed the basis for the prior representation. *Id.* at 1269.[9] By contrast, in *Singh v. Duane Morris LLP*, 538 F.3d 334 (5th Cir. 2008), the Fifth Circuit held that § 1338(a) did not confer subject matter jurisdiction over a state-law malpractice claim "merely because the alleged malpractice occurred in a prior federal trademark suit." *Id.* at 337. Specifically, the Fifth Circuit held that although the trademark issues were both necessary to resolution of the state-law claim and actually disputed by the parties, federal question jurisdiction was nonetheless inappropriate because the federal issue was "not substantial" and because "federal jurisdiction over this state-law malpractice claim would upend the balance between federal and state judicial responsibilities." *Id.* at 338, 339.[10]

The parties urge adoption of the Federal Circuit's reasoning, pointing to the Fifth Circuit's observation in distinguishing *Air Measurement* that "[i]t is possible that the federal interest in patent cases is sufficiently more substantial [than in trademark cases], such that it might justify federal jurisdiction." *Id.* at 340. Specifically, they argue that because the federal courts have exclusive

---

[9] *See also, e.g., Immunoconcept, LLC v. Fulbright & Jaworsky, LLP*, 504 F.3d 1281, 1284–86 (Fed. Cir. 2007) (following *Air Measurement* in legal malpractice suit stemming from prior patent litigation); *Nryne v. Wood, Herron, & Evans, LLP*, No. 2:08-102, 2008 WL 3833699 (E.D. Ky. Aug. 13, 2008) (same); *Berndt v. Greenwich Ins. Co.*, No. 07-12097, 2008 WL 3842998, at *2–4 (D. Mass. Aug. 15, 2008) (same).

[10] It is worth noting that in so holding, the Fifth Circuit cited to the Fourth Circuit's observation in *Custer* that " 'the law governing legal malpractice represents a traditional exercise of state authority[.]' " *Singh*, 538 F.3d at 339 n. 6 (quoting *Custer*, 89 F.3d at 1167).

-7-

jurisdiction over both patent and copyright infringement suits, and merely concurrent jurisdiction over trademark suits, the Federal Circuit's reasoning in *Air Measurement* should control.

To be sure, it is true that the standard for federal question jurisdiction "has at times been less than pellucid . . . ." *Id.* at 338. But it is also true that plaintiff's claims here require resolution of substantial questions of federal law—namely, whether defendants knowingly misrepresented to plaintiff the strength and value of Wrenn's federal copyright claim. Further, because the underlying suit in question was a copyright infringement suit over which the federal courts have exclusive jurisdiction, the substantial nature of the federal interest presented here is analogous to the federal interest in *Air Measurement* where, as here, the underlying suit could not have been brought in state court. In *Singh*, by contrast, the federal interest was less substantial, as there, unlike here, the underlying suit could have been brought in a state forum. Thus, although the existing governing law on the question presented is less than clear, the majority of cases point persuasively to the conclusion that § 1338(a) federal question jurisdiction exists here because it will be necessary in this case to decide issues of federal copyright law in order to resolve plaintiff's state-law claims.

### III

It is next necessary to address defendants' arguments in support of their motion to dismiss. In that regard, it is clear both (i) that plaintiff's claim for declaratory judgment does not present a controversy between these parties, and (ii) that plaintiff's claims for fraud and breach of fiduciary duty are time-barred. Accordingly, they must be dismissed, and it is unnecessary to address defendants' argument that plaintiff lacks standing as the proper party in interest, pursuant to Rule

17(a), Fed. R. Civ. P.[11]

First, Count II purports to seek declaratory judgment against defendants, pursuant to 28 U.S.C. § 2201(a).[12] Compl. ¶ 117. Plaintiff's complaint does not, however, elucidate the declaration plaintiff seeks. Rather, it simply asserts that "Wrenn's ownership [of the copyright at issue] has been challenged" and claims that the "controversy is within the Court's jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a)." *Id.* Thus, because plaintiff's complaint does not request any

---

[11] Plaintiff's response to defendants' argument that he lacks standing to bring these claims appears to be two-fold. First, he asserts that insofar as the claims at issue belong to Wrenn, he, as Wrenn's "successor-in-interest," is entitled to bring them in his own name. It appears doubtful that such is the case, as Virginia law clearly provides that a dissolved corporation may still bring claims that arose before dissolution "in its *corporate name.*" Va. Code § 13.1-755 (emphasis added). Thus, insofar as the claims brought here are such claims, this plaintiff would not be the real party in interest pursuant to Rule 17(a), Fed. R. Civ. P., and it would be impermissible for these claims to proceed *pro se* in the event Wrenn was substituted as the proper plaintiff. *See In re Tamojira*, 20 Fed. App'x 133–34 (4th Cir. 2001) ("Although 28 U.S.C. § 1654 . . . permits parties to conduct their own litigation, it is well settled that a corporation must be represented by an attorney in federal court.").

Second, plaintiff asserts that he is the real party in interest because he, not Wrenn, was H&K's client, and thus he was the victim of H&K's alleged fraud and breach of fiduciary duty. Again, it appears doubtful that this is the case, as H&K both registered the copyright at issue and filed the underlying lawsuit in Wrenn's name. *See* Compl. ¶ 19 ("Under copyright law, Wrenn was the sole copyright owner of the plans."); *Wrenn*, No. 1:04cv354 (E.D. Va. March 30, 2004) (Complaint).

In any event, it is unnecessary to decide these issues in this ruling because, as explained *infra*, plaintiff's claims, as pled, must be dismissed on the bases that (i) the declaratory judgment claim does not present a controversy between the parties, and (ii) the fraud and breach of fiduciary duty claims are time-barred.

[12] Section 2201(a) provides, in pertinent part, as follows:

> (a) In a case of actual controversy within its jurisdiction, [subject to various exceptions inapplicable here] . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

specific declaration, plaintiff has failed to plead an "actual controversy" within § 2201(a)'s scope. Moreover, even assuming plaintiff's complaint seeks a declaration that either he, or perhaps Wrenn, is the legal owner of the copyright at issue in the underlying suit filed by H&K, it is clear that *these* defendants have no adverse interest to that declaration, and accordingly, it is clear that § 2201(a) does not provide a remedy. Thus, Count II must be dismissed.

Next, with respect to Counts I and III, it is clear that plaintiff's claims, as pled, are time-barred and must be dismissed. First, assuming that Count I is, as pled, a fraud claim, it is subject to a two-year statute of limitations that begins to run when the alleged fraud is discovered or reasonably should have been discovered by the exercise of due diligence. *See* Va. Code § 8.01-243(A) ("[E]very action for damages resulting from fraud[] shall be brought within two years after the cause of action accrues."); Va. Code. § 8.01-249(1) (cause of action for fraud accrues when fraud "is discovered or by the exercise of due diligence reasonably should have been discovered"). Accordingly, because plaintiff either discovered or reasonably should have discovered his claims no later than when he came into possession of Brownell's file in June 2005—more than three years before he filed this suit in October 2008—Count I is time-barred.

Second, with respect to Count III, assuming it is, as pled, a breach of fiduciary duty claim, it is subject to Virginia's general two-year statute of limitations. *See* Va. Code § 8.01-248 (providing general two-year statute of limitations where not otherwise prescribed by statute); *Singer v. Duncan*, 45 F.3d 823, 827 (4th Cir. 1995) ("We have ruled repeatedly that under Virginia law a breach of fiduciary duty claim is subject to the . . . limitations period of § 8.01-248."); *Goldstein v. Malcom G. Fries & Assocs., Inc.*, 72 F. Supp. 2d 620, 625–26 (E.D. Va. 1999) ("Claims for breach of

fiduciary duty are governed by Virginia's catch-all statute of limitations . . . ." (citing § 8.01-248)).[13]

Further, the two-year period runs from the date of the alleged breach because a breach of fiduciary duty cause of action "accrues on the date of the breach, not the date of discovery." *Id.* at 626. Here, all the alleged breaches stem from defendants' representation related to a copyright infringement suit that was dismissed in October 2004. Accordingly, because plaintiff failed to file this lawsuit until more than four years later, Count III is plainly time-barred.

A final point merits mention. Plaintiff's claims of fraud and breach of fiduciary duty are arguably mere disguises for a legal malpractice claim.[14] Yet, plaintiff elected to plead claims of fraud and breach of fiduciary duty rather than legal malpractice. And it is the claims as pled that are dismissed here as time-barred. This Order does not reach or decide the merits of any properly pled malpractice claim brought by a proper plaintiff, which if it is a corporation, cannot proceed *pro se*, but must be represented by counsel.[15]

Accordingly, for the reasons stated herein, and for good cause,

It is hereby **ORDERED** that defendants' motion to dismiss is **GRANTED**; plaintiff's

---

[13] It is worth noting that § 8.01-248's statutory period was amended in 1995 from one to two years for claims accruing on or after July 1, 1995. *See* 1995 Va. Acts, ch. 9, effective Feb. 21, 1995. Accordingly, although *Singer* and *Goldstein*, which addressed claims that accrued before July 1, 1995, applied a one-year statute of limitations to breach of fiduciary duty claims, it is clear that a two-year period applies here.

[14] *See Gen. Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP*, 357 F. Supp. 2d 951, 961–62 (E.D. Va. 2005) (finding breach of contract and breach of fiduciary duty claims, brought along with a legal malpractice claim, to be "mere disguises for plaintiff's legal malpractice claims"); *O'Connell v. Bean*, 263 Va. 176, 181 (2002) (finding claims for constructive fraud and breach of fiduciary duty, "though sounding in tort, [were] actions for breaches of the implied terms of [the attorney-client] contract").

[15] *See supra* at note 11.

complaint is accordingly **DISMISSED**.

Should plaintiff wish to appeal, he must file a written notice of appeal with the Clerk's Office within thirty (30) days of the date of this Order. Fed. R. App. P. 4(a). A written notice of appeal is a short statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the Court of Appeals.

The Clerk is directed to send a copy of this Order to the *pro se* plaintiff and all counsel of record. The Clerk is further directed to place this matter among the ended causes.

Alexandria, Virginia
February 12, 2009

_____
T. S. Ellis, III
United States District Judge